IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JACKIE LEE BROOKS                                                          MOVANT

v.                                                                No. 3:17CR33-SA-RP

UNITED STATES OF AMERICA                                              RESPONDENT

### MEMORANDUM OPINION

This matter comes before the court on the motion of Jackie Lee Brooks to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion; Brooks has replied, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.[1]

### *Habeas Corpus* Relief Under 28 U.S.C. § 2255

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56.

---

[1] Brooks did not initially file a reply, and the court issued its opinion and final judgment once the reply deadline had expired. Brooks then moved for reconsideration, stating that he did not receive a copy of the Government's Response to the § 2255 motion. The court granted reconsideration; Brooks has replied, and the court now issues the instant revised opinion and final judgment in light of Brooks' reply.

Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles that developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*.

## Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the

- 2 -

moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear

- 3 -

appropriate." 28 U.S.C. § 2255(b).

## Facts and Procedural Posture[2]

A federal grand jury returned a multi-count indictment on March 23, 2017, charging

Jackie Brooks and others with conspiracy to possess with intent to distribute methamphetamine

as well as violations of federal firearms laws. Presentence Investigation Report ("PSR") ¶ 1-7.

On August 23, 2017, Brooks was charged with the same counts in a Superseding Indictment.

Count One charged conspiracy to possess with intent to distribute methamphetamine in violation

of Title 21, U.S.C. § 841(a), (b)(1)(A) and 846.

Counts Two through Five charged possession with intent to distribute fifty (50) grams or

more of methamphetamine, in violation of Title 21, U.S.C. § 841(a), (b)(1)(A). Counts Six and

Seven charged aiding and abetting possession with intent to distribute fifty (50) grams or more of

methamphetamine, in violation of Title 21, U.S.C. § 841(a), (b)(1)(A). Count Eight charged

possession of firearms by a convicted felon, in violation of Title 18, U.S.C. § 922(g)(1) and

924(a)(2). Count Eleven charged conspiracy to travel in interstate commerce with the proceeds

of his unlawful drug trafficking activity and distribution of the proceeds, in violation of Title 18,

U.S.C. § 371 and 1952. (PSR ¶ 8).

Brooks was the leader of a drug trafficking organization that operated in Benton County,

Mississippi and acquired, sold, and distributed large quantities of methamphetamine purchased

from sources of supply in Southern California and Georgia. (PSR ¶¶ 16, 19, 49). On six

---

[2] The court has drawn the facts and procedural posture from the Government's response to the instant motion to vacate, set aside, or correct sentence, as they are both well-documented and uncontested.

occasions over the course of the government's investigation, Brooks sold varying amounts of methamphetamine to an undercover government agent or government confidential informant. (PSR ¶ 28). Brooks was also the subject of a court authorized wire intercept. He was intercepted on phone calls and text messages communicating with members of the conspiracy concerning their drug trafficking activities. (PSR ¶ 17). The PSR contained several examples of the substance of Brooks' phone calls and the amounts of methamphetamine he discussed with his co-conspirators over the wire and electronic intercepts (PSR ¶¶ 29-36), as well as evidence acquired during the government's investigation derived from interviews and proffers made by confidential sources. (PSR ¶¶ 18-22).

On February 7, 2017, Brooks and his co-conspirator gathered approximately $120,000 of drug money and drove from Benton County, Mississippi to Southern California to meet his supplier in order to purchase approximately fifty (50) pounds of methamphetamine. He met with his supplier but was only able to purchase approximately thirty-five (35) pounds of methamphetamine. PSR ¶ 23. On February 11, 2017, as a result of the government's investigation, Brooks was stopped on Interstate 72 in Marshall County, Mississippi in possession of 14,913 grams of methamphetamine. During the stop, Brooks attempted to shift the truck into drive and flee the scene with law enforcement officers hanging from the truck. Brooks was stopped at gunpoint. PSR ¶¶ 24, 25.

The PSR calculated the following amounts of methamphetamine attributable to Brooks and his role as the leader of the drug trafficking conspiracy:

▪ CS 1 described trips to Atlanta with Brooks to acquire over **13 pounds** of methamphetamine (PSR ¶ 19)

- 5 -

▪ CS 1 described seven to nine trips to California with Brooks to purchase approximately **150 pounds** of methamphetamine plus an additional **10 pounds** (PSR ¶ 20)

▪ Co-defendant statements conservatively estimated **40 pounds** of methamphetamine purchased by Brooks in Southern California between November 2016 and his arrest in February 2017 (PSR ¶ 22)

▪ February of 2017, Brooks arrested in possession of approximately **35 pounds** of methamphetamine (PSR ¶ 23)

▪ Intercepted communications between Brooks and co-conspirator revealed distribution of **10 pounds** of methamphetamine (PSR ¶ 30)

As a result of the information contained in the PSR, Brooks was held responsible for 48.9 kg of methamphetamine. PSR ¶ 38. Brooks' base offense level under U.S.S.G. §2D1.1 for any amount of methamphetamine over 4.5 kg was an offense level 38. PSR ¶ 46. He received the following adjustments: +2 for possession of a dangerous weapon; +4 for organizer/leader; and +2 for recklessly creating a risk of bodily injury to another while fleeing from law enforcement. PSR ¶¶ 47, 49, 50). With a three-level decrease for acceptance of responsibility, Brooks' total offense level was 43. PSR ¶ 55. Brooks' criminal history score was one, which resulted in a criminal history category of I. PSR ¶ 63. The PSR also noted "[n]one" under the category, "Offense Behavior Not Part of Relevant Conduct." PSR ¶ 56. Put another way, the PSR made no mention of any information obtained from Brooks' proffers with the government.

On October 3, 2018, the court held a sentencing hearing. The government did not have any objections to the PSR. Though Brooks initially filed one objection to the PSR, at the beginning of the sentencing hearing, he withdrew it. *See* Exhibit A, Sent. Tr. 2, 5. At sentencing, the court noted that the government filed a motion for downward departure from the sentencing guidelines based upon Brooks' substantial assistance. Sent. Tr. 3. The court also recognized the "22 letters on behalf of Mr. Brooks, and I have reviewed those letters of family,

- 6 -

friends, prior acquaintances . . ." *Id.* The court also noted "the fact that there are many, many, many people here in the courtroom in support of Mr. Brooks." *Id.* The court was mindful of "the times and occasions in the past that you have brought aid to persons in need and helped others that were less fortunate." Sent. Tr. 8.

The government then addressed the court:

Your Honor, I don't want to belabor this. The government did file a motion for a 5K1 based upon Mr. Brooks' substantial assistance. I won't go into any details of that. It speaks for itself. And I know Your Honor has read that and will give it whatever weight the Court deems necessary.

And, Your Honor, he did provide—he did provide substantial assistance, as reflected in the government's motion. And I know the Court has read the PSR, and the PSR speaks for itself, and being no objections, the Court I assume will adopt it.

But I can't let the opportunity pass to convey to the Court, and I supposed to those present in the gallery, I have no reason to take issue with any of the letters that have been written on his behalf. I have not, in fact— I've not seen them, but I've seen letters like them, and I can only imagine what they say. And I'm sure the Court will give those whatever weight it deems necessary.

But in my humble opinion and in my humble experience of ten years in the U.S. Attorney's Office, I'm not aware of a more significant drug trafficker in the Northern District of Mississippi than Mr. Brooks. Now, that's just my opinion, Your Honor. That's just based on the knowledge I have of the cases that I've seen in our office over ten years. And that's reflected in the PSR, significant quantities of methamphetamine. The historical quantities are in the hundreds of pounds… [b]ut I would be remiss— and I'm pointing out the obvious to the Court, Your Honor. I apologize for that, but Mr. Brooks is a very significant drug trafficker, and that's reflected in his guideline range . . . .

Sent. Tr. 9.

The court adopted the PSR without change, again noting the withdrawal of Brooks' objection. Brooks' guideline range for Count One was life imprisonment; Count Eight, 120 months; and Count Eleven, 60 months. PSR ¶ 91. The court departed from the guideline range based upon the government's motion for downward departure. Sent. Tr. 14. Brooks was

sentenced to 240 months on Count One; 120 months on Count 8; and 60 months on Count Eleven; to run concurrently. Sent. Tr. 14. In pronouncing sentence, the court discussed the need for the sentence to reflect Brooks' offense level, criminal history background, the scheme of the criminal conduct, and his role as leader of the conspiracy. Sent. Tr. 15. The court entered judgment on October 10, 2018. Doc. 282.

On October 31, 2019, Brooks filed the instant Motion to Vacate Under 28 U.S.C. § 2255 arguing that his counsel provided ineffective assistance by "failing to object to the government's breach of the proffer agreement at sentencing," as Brooks (incorrectly) believes that the government provided information from his proffer agreement to the Probation Service to include in his Presentence Investigation Report – and that the government revealed some of that information during sentencing. Doc. 306, p. 4. The government responded to the motion; Brooks has replied, and the matter is ripe for resolution.

### Ineffective Assistance of Counsel

Brooks' sole claim in the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 is that defense counsel provided ineffective assistance by "failing to object to the government's breach of the proffer agreement at sentencing." *Id.* The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.

- 8 -

The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

**Deficient Performance by Counsel**

The first prong of the *Strickland* test requires that the defendant show that counsel's performance was deficient, or that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. The movant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland*, 449 U.S. at 687. The court's review of counsel's performance must be "highly deferential," and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 449 U.S. at 689 (emphasis added); *see United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996) (attorney

performance enjoys strong presumption of adequacy and is deficient only if it is objectively unreasonable).

The petitioner bears the burden to prove that the conduct of trial counsel fell below the constitutional minimum guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 686. The court may consider only whether counsel's assistance was reasonable considering all the circumstances. *Strickland*, 466 U.S. at 688. No set of rules can legitimately take into account the nearly infinite circumstances counsel faces – or the range of legitimate decisions regarding how best to represent a criminal defendant that counsel must consider. *Id*. at 689. A court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Brooks' entire claim is based on a false premise: that the government breached the proffer agreement by passing information he provided during his proffer regarding his crimes to the Probation Service to use in drafting the Presentence Investigation Report – and that the government revealed some of that information during sentencing. However, Brooks' proffer agreement was not mentioned at sentencing. *See, generally*, Sent. Tr. The government merely commented on facts contained in the PSR – which is both normal and permissible. *Id*. Brooks also states that the court used the information to increase his sentence – even though the court imposed a sentence *below* the guideline range. *Id*.

In his reply, Brooks argues that, in the absence of his proffer interviews, "the government would never have known that [he] was the 'most significant drug trafficker' in Mississippi or that he

- 10 -

had trafficked in 'hundreds of pounds of methamphetamine.'"  Doc. 415 at 5 (Movant's Reply).  He believes that

> the government disclosed [his] incriminating proffer statements to the Court's probation officer who, in turn, used them to increase his sentencing range. Furthermore, [the] AUSA used Mr. Brooks' proffer information to advocate against him at sentencing.

*Id*.  In support of his allegation, Brooks states that the government's anonymous sources provided information regarding his trips to California to obtain and transport methamphetamine – and their statements "parrot[ed] statements made by the Movant during his proffer sessions [verbatim]."  *Id*. Brooks seems to imply (without proof) that the anonymous sources did not exist, and the government's information came solely from his first or second proffer.  He argues that the government's reference to "hundreds of pounds of methamphetamine" must come from his proffer because the PSR "calculated the weight at 48.9 kilograms."  Doc. 415 at 8.  However, 48.9 kilograms is 107.8 pounds – which *is* more than 100 pounds.  In any event, the PSR also reflects that Brooks and other conspirators acquired some 258 pounds of methamphetamine during the course of the conspiracy – which also qualifies as "hundreds of pounds."  PSR ¶¶ 19, 20, 22, 23, 30.

Ultimately, Brooks believes that he was entitled to a more lenient sentence, arguing that his initial proffer was sufficient to justify a reduction in his sentence based upon United States Sentencing Guideline 5K1.1 – and that the government withheld seeking that reduction to induce him to provide additional information in a second proffer.  He believes that if the government had properly considered his second proffer – and the outpouring of community support – he may have enjoyed "immediate release," or at least a more lenient sentence than the 240 months the court imposed.  Brooks argues that counsel provided ineffective assistance by failing to object to the government's alleged use of his proffer to calculate his sentence in the PSR – and during the sentencing hearing.

- 11 -

The type of information that Brooks believes was improperly put in the PSR (and used during sentencing) would be found under the heading "Offense Behavior Not Part of Relevant Conduct," which can contain references to information provided by the defendant to the government under the terms of a "proffer agreement" under United States Sentencing Guidelines § 1B1.8. This section provides that, pursuant to an agreement between the parties, information provided by the defendant "shall not be used in determining the applicable guideline range, except to the extent provided in the agreement." *However, in Brooks' PSR there is no information under that heading.* Neither did the government make reference to such information during sentencing; instead, the government referred to the PSR each time it mentioned Brooks' conduct or the quantity of drugs attributed to him. Sent. Tr. p, 8-10. As set forth above, the PSR contains no reference to any information Brooks provided in his proffer to the government; instead, it contains information gleaned from other sources: court-authorized surveillance, intercepted telephone calls, and various other types of electronic intercepts. PSR ¶¶ 17, 29-36, 18-22.

Finally, to the extent that Brooks relies on the government's reference to "hundreds of pounds of methamphetamine," the Probation Service attributed 48.9 kilograms (107.8 pounds) to him. As this is more than 100 pounds, the reference to "hundreds of pounds" was accurate. In addition, as set forth above, he and the other conspirators acquired some 258 pounds of methamphetamine during the relevant period. For these reasons, this ground for relief is without substantive merit.

**Actual Prejudice**

Even if Brooks had shown that counsel's performance was deficient, he has not met the second prong of the *Strickland* test (actual prejudice to his legal position), as he has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *United States v. Conley*, 349 F.3d 837, 841-42 (5ᵗʰ Cir. 2003). It is not enough to show that errors may have had an effect on the outcome of the proceeding. *Strickland, supra*, at 694.

In this case, Brooks has offered no evidence to show that counsel's actions had a detrimental effect on the outcome of his criminal case. The PSR was well-documented, including Brooks' admissions – and both sides agreed to its content. Brooks has offered no evidence to support his allegation that the Probation Service used statements from his proffer in drafting the PSR – or that the government used those statements at sentencing. Attorneys are not required by the Sixth Amendment to file meritless motions. *United States v. Gibson*, 55 F.3d 173, 179 (5ᵗʰ Cir.1995); *Koch v. Puckett*, 907 F.2d 524, 527 (5ᵗʰ Cir. 1990); *see also Clark v. Collins*, 19 F. 3d 959, 966 (5ᵗʰ Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.") Indeed, failure to raise a frivolous objection cannot support a claim of ineffective assistance of counsel, as the result of the proceeding would not have changed had the attorney raised the issue (because the court would overrule a frivolous objection). *See United States v. Kimler*, 167 F.3d 889, 892 (5ᵗʰ Cir. 1999); *Williams v. Collins*, 16 F.3d 626, 634-35 (5ᵗʰ Cir. 1994).

Finally, the court granted the government's motion for downward departure, and Brooks received a sentence well below the recommended guideline range – a fact weighing against a finding of prejudice. Doc. 296 at 14 (Sentencing transcript). Brooks has not shown that he suffered prejudice as a result of counsel's decision not to object to the government's discussion regarding his participation in the crime – and the amount of methamphetamine attributed to him in the PSR. Ultimately, Brooks and his co-conspirators trafficked an enormous amount of

methamphetamine for more than a year, and – in accordance with the Sentencing Guidelines and governing authority – the sentence imposed reflects the gravity of the offense.

### Conclusion

In sum, Brooks has shown neither deficient performance by counsel nor prejudice from counsel's actions; as such, his claim regarding ineffective assistance of counsel must fail. Brooks' sole ground for relief is thus without substantive merit, and the instant motion to vacate, set aside, or correct sentence will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 26th day of March, 2025.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE

- 14 -